RIECK and husband, Respondents, v. MEDICAL PROTECTIVE COMPANY and others, Appellants.

*No. 99. Argued June 5, 1974.—Decided June 28, 1974.*
(Also reported in 219 N. W. 2d 242.)

516

For the appellants there was a brief by *Binder, Zirbel & Howard,* attorneys, and *Irving W. Zirbel* of counsel, all of Milwaukee, and oral argument by *Irving W. Zirbel.*

For the respondents there was a brief and oral argument by *Edward P. Rudolph* of Milwaukee.

ROBERT W. HANSEN, J.   This is an action for damages based on the birth of a normal child, healthy and well. The action is brought by the father who sired and the mother who bore the baby boy against a clinic and the obstetrician who allegedly failed to determine and timely inform the mother that she was pregnant.

The basis of the parents' action is that the child, their fourth, was an unwanted addition to the family circle. There is no allegation that the child, once born, is or will continue to be an unwelcome member of the family household.   Nor is there any allegation that the parents sought

to terminate their parental rights to the child,[1] or place him for adoption.[2] The complaint alleges only that, if the parents had been timely informed of the fact of the mother's pregnancy, they would not have permitted the child to be born to them. The prayer for relief does not suggest that the allegedly negligent obstetrician is to raise the child. The parents will do that. What is demanded is that the costs of rearing the child be transferred to the obstetrician, the clinic and their insurer.

The complaint raises question of public policy, or, more precisely, whether the public policy tests, heretofore laid down by this court, are here met. In this state, negligence plus an unbroken sequence of events establishing cause-in-fact does not necessarily lead to a determination that a defendant is liable for plaintiff's injuries.[3] Recovery, or the determination to impose or not to impose liability, involves public policy considerations.[4] Even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden (in the case before us, upon physicians and obstetricians); or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no

---

[1] *See:* Secs. 48.40–48.43, Stats.

[2] *See:* Secs. 48.81–48.97, Stats.

[3] *Hass v. Chicago & North Western Ry. Co.* (1970), 48 Wis. 2d 321, 326, 179 N. W. 2d 885, quoted and followed in *Howard v. Mt. Sinai Hospital* (1974), 63 Wis. 2d 515, 217 N. W. 2d 383.

[4] *Id.* at page 326, quoting *Colla v. Mandella* (1957), 1 Wis. 2d 594, 598, 599, 85 N. W. 2d 345.

sensible or just stopping point.[5] Any one of these public
policy considerations could be sufficient to deny recover-
ability. We find more than one applicable to the allega-
tions of this complaint, requiring a denial of recovery
of damages upon the allegations of this complaint upon
public policy grounds.

To permit the parents to keep their child and shift the
entire cost of its upbringing to a physician who failed to
determine or inform them of the fact of pregnancy would
be to create a new category of surrogate parent. Every
child's smile, every bond of love and affection, every
reason for parental pride in a child's achievements, every
contribution by the child to the welfare and well-being
of the family and parents, is to remain with the mother
and father. For the most part, these are intangible bene-
fits, but they are nonetheless real.[6] On the other hand,
every financial cost or detriment—what the complaint
terms "hard money damages"—including the cost of food,
clothing and education, would be shifted to the physician
who allegedly failed to timely diagnose the fact of preg-
nancy. We hold that such result would be wholly out of
proportion to the culpability involved, and that the al-
lowance of recovery would place too unreasonable a

[5] *Id.* at page 326, quoting *Colla v. Mandella, supra,* at pages 598,
599.

[6] *See: Terrell v. Garcia* (Texas Civ. App. 1973), 496 S. W. 2d
124, 128, the court holding, in a negligent sterilization case, that
the benefits accruing from parenthood outweigh damages accruing
from the birth of a healthy child, stating: ". . . These intangible
benefits, while impossible to value in dollars and cents are undoubt-
edly the things that make life worthwhile. Who can place a price
tag on a child's smile or the parental pride in a child's achieve-
ment? Even if we consider only the economic point of view, a
child is some security for the parents' old age. Rather than at-
tempt to value these intangible benefits, our courts have simply
determined that public sentiment recognizes that these benefits
to the parents outweigh their economic loss in rearing and educat-
ing a healthy, normal child. We see no compelling reason to
change such rule at this time."

burden upon physicians, under the facts and circumstances here alleged.

The complaint here alleges what the parents of the child would have done if they had been informed of the fact of pregnancy at the time of the mother's consulting the obstetrician sued. At the time of trial it is entirely predictable that the parents would have firmly testified to the fact of such intention, and its fixed and unalterable character. It is cultivating the obvious to state that, if the door were opened to recovery under such allegation and such subjective testimony as to state of mind or intention, the temptation would be great for parents, where a diagnosis of pregnancy was not timely made, if not to invent an intent to prevent pregnancy, at least to deny any possibility of change of mind or attitude before the action contemplated was taken. We have no hesitancy in concluding that to hold that the allegations of this complaint constitute a cause of action for recoverable damages would open the way for fraudulent claims and would enter a field that has no sensible or just stopping point.

On this appeal the issue is raised as to a duty on the part of parents, claiming that a child of theirs is unwanted, to take steps to terminate their parental rights and place the child for adoption. The issue is raised in reference to mitigation of damages. On the public policy issue, the absence of steps to terminate parental rights is material only as reflecting parental intent to keep and raise the child involved. It is such retention of benefits —the parents keeping their child, and seeking to transfer only the financial costs of its upbringing to the doctor— that is a relevant factor in evaluating the public policy considerations involved. As one court has put it, "To allow damages in a suit such as this would mean that the physician would have to pay for the fun, joy and affection which plaintiff . . . will have in the rearing and educating of this, defendant's fifth child. Many people

would be willing to support this child were they given the right of custody and adoption, but according to plaintiff's statement, plaintiff does not want such. He wants to have the child and wants the doctor to support it. In our opinion to allow such damages would be against public policy." [7] We agree.

This court has noted that application of the public policy tests as to recovery of damages ". . . does not in all cases require a full factual resolution of the cause of action by trial before policy factors will be applied by the court. . . ." [8] Where the public policy question is fully presented by the complaint and demurrer, there is no necessity that a full trial precede the court's determination.[9] In the case before us, given plaintiffs' complaint and defendants' demurrer, we hold that it would contravene sound public policy to hold recoverable the damages claimed for the negligence alleged in this case and under these circumstances. Since the child involved might some day read this decision as to who is to pay for his support and upbringing, we add that we do not understand this complaint as implying any present rejection or future strain upon the parent-child relationship. Rather we see it as an endeavor on the part of clients and counsel to determine the outer limits of physician liability for failure to diagnose the fact of pregnancy. This case and this complaint are well beyond such limits.

*By the Court.*—Order reversed and cause remanded with directions to grant the demurrer of the defendants to the complaint of the plaintiffs.

[7] *Shaheen v. Knight* (Lycoming County 1957), 11 Pa. D. & C. 2d 41, 45, 46, denying recovery in a negligent sterilization case.

[8] *Hass v. Chicago & North Western Ry. Co., supra,* at pages 326, 327.

[9] *Id.* at page 327.