**Doris Mae COLEMAN et al., Plaintiffs,**

**v.**

**George H. H. GARRISON and Wilmington Medical Center, Inc., a corporation of the State of Delaware, Defendants.**

Superior Court of Delaware,
New Castle.

Sept. 30, 1974.

Joseph S. Yucht, Balick & Yucht, Wilmington, for plaintiffs.

Rodney M. Layton, Jane R. Roth, Richards, Layton & Finger, Wilmington, for defendant Garrison.

Howard M. Handelman, William J. Alsentzer, Jr., Bayard, Brill & Handelman, Wilmington, for defendant Wilmington Medical Center.

## OPINION

BUSH, Judge.

Plaintiffs have brought an action for damages alleging that the defendants improperly performed a certain sterilization operation upon the person of the plaintiff, Doris Mae Coleman. Plaintiffs ask for damages including, inter alia, support for their new child, by virtue of the fact that the plaintiff, Doris Mae Coleman, subsequently became pregnant and delivered another son to the Coleman family.

The defendant, Wilmington Medical Center, Inc., moved in this Court to dis-

miss · the plaintiffs' complaint on the ground that plaintiffs do not have a recognizable cause of action. The Superior Court denied the defendant's motion. See 281 A.2d 616 (Del.Super.Ct.1971).

The moving defendant appealed the decision to the Supreme Court who advised the lower court to put the opinion in a fresh posture. See 298 A.2d 320 (Del.Supr.Ct. 1972).

Therefore, the defendant and plaintiffs entered into a new briefing schedule in this Court with respect to defendant's motion to dismiss in order that the issues raised may be considered anew in light of the Supreme Court's directive. Concurrently the defendant, Wilmington Medical Center, Inc., has also moved in the alternative for summary judgment.

On October 7, 1966, the plaintiff, Doris Mae Coleman, gave birth to a son. The defendant, George H. H. Garrison, M.D., attended the birth at the Wilmington Medical Center, Inc. Plaintiffs maintain that prior to the birth, Mrs. Coleman discussed with Dr. Garrison the desirability and feasibility of sterilization of Mrs. Coleman for therapeutic purposes and/or socio-economic considerations.

On October 8, 1966, Dr. Garrison performed at the Wilmington Medical Center, Inc., an operation known as a bilateral tubal ligation upon Mrs. Coleman. Plaintiffs allege that Dr. Garrison was assisted in the operation by agents of the Wilmington Medical Center, Inc.

Subsequent to the operation, Mrs. Coleman became pregnant and a child was born to her on October 26, 1968, without complications.

Plaintiffs allege in their complaint the following causes of action: (1) negligent treatment in the performance of the operation and also in post-operative procedures; (2) negligent treatment in failing to correctly appraise Mr. and Mrs. Coleman of the consequences of the operation; (3) the doctrine of res ipsa loquitur as being appli-

cable to the plaintiff, Doris Mae Coleman; (4) negligent and careless misrepresentation; (5) breach of contract.

As a result of the aforesaid causes of action, plaintiffs have demanded special, general and exemplary damages for the following:

1. The pain, suffering and discomfort of Doris Mae Coleman as a result of her last pregnancy;

2. The cost of a tubal ligation;

3. The loss to Leroy B. Coleman of the comfort, companionship, services and consortium of Doris Mae Coleman;

4. The deprivation to Ella Mae Coleman, Leroy B. Coleman, Jr., Larry Edward Coleman, Linda Marie Coleman, and Thomas Phillip Coleman of the amount of care and support which they would have received had the last child not been born in 1968;

5. Medical expenses incurred by Mr. and Mrs. Coleman as result of the 1968 pregnancy of Mrs. Coleman;

6. Care and maintenance for the child born to Mr. and Mrs. Coleman in 1968.

The primary issue in this case is whether a cause of action exists against defendants assuming that fault on their part led to the birth of an "unplanned", yet normal and healthy child.

A review of cases which have ruled on this or similar issues leads to the conclusion that unwarranted difficulty has been encountered in an attempt to judicially weigh the "value" of a new life as opposed to physical and monetary costs of bearing and raising a child. This "balancing" concept has been founded primarily on the "special benefit" rule requiring mitigation of damages where equitable if the injury to it has also conferred some advantage. Restatement of the Law of Torts, § 920.

In applying the "balancing" formula cited above, several courts have reached the

conclusion that public policy prevents a ruling, absent legislation, that the value of human life could ever be outweighed by any "damages" attributable to the birth of a child. Gleitman v. Cosgrove, 49 N.J. 22, 227 A.2d 689 (1967); Stewart v. Long Island College Hospital, 35 A.D.2d 531, 313 N.Y.S.2d 502 (1970) Off. 30 N.Y.2d 695, 332 N.Y.S.2d 640 (1972); Shaheen v. Knight, 11 D. and C.R.2d 41 (Pa.1957); Terrell v. Garcia, 496 S.W.2d 124 (Tex. Civ.App.1973).

Notwithstanding the decisions above, other jurisdictions have held that such a cause of action exists: Jahnson v. Anderson, 230 So.2d 503 (Fla.App.1970); Custodio v. Bauer, 251 Cal.App.2d 303, 59 Cal. Rptr. 463 (1967). Furthermore, in so ruling, one court has openly invited a "balancing" of interests and held that the extent of damages should be determined by a jury in light of the particular circumstances involved. Troppi v. Scarf, 31 Mich.App. 240, 187 N.W.2d 511 (1971).

■ It is the view of this Court that there should be no cause of action so established as to allow damages for "wrongful life." The preciousness of human life should not be held to vary with the circumstances surrounding birth. To make such a determination would, indeed, raise the unfortunate prospect of ruling, as a matter of law, that under certain circumstances a child would not be worth the trouble and expense necessary to bring him into the world. It is not difficult to understand the reluctance of many distinguished jurists to find that the birth of a child is an injury for which plaintiff should deserve an award of damages.

That is not to say, however, that the plaintiff has not suffered a recognizable injury where avoidable pregnancy has resulted from faulty medical procedure. To the contrary, a ruling that no recognizable cause of action could exist under such circumstances would leave the medical profession virtually immune from liability for improper treatment of patients justifiable seeking to avoid pregnancy.

■ A more appropriate resolution of the difficulties presented, and the one hereby adopted, is to view the action as one for "wrongful pregnancy" rather than one for "wrongful life" thereby limiting the scope of the injury to the very real expenses, and obvious difficulties attending the unexpected pregnancy of a woman.

■ Limitation of the cause of action in such a manner is valid since to do otherwise, would be to invite unduly speculative and ethically questionable assessments of such matters as the emotional affect of a birth on siblings as well as parents, and the emotional as well as pecuniary costs of raising an unplanned and, perhaps, an unwanted child in varying family environments. Speculative damages are, quite simply, not recoverable in this State. See Laskowski v. Wallis, 205 A.2d 825 (Del. Supr.1964); Henne v. Balick, 1 Storey 369, 146 A.2d 394 (Del.Supr.1958).

■ Furthermore, this Court does not find it reasonable for a defendant to be assessed damages representing support for a child when the plaintiffs choose to raise the child even where other lawful alternatives are available. In so doing, the plaintiff-parents are thus indicating that the benefits at least in their particular case, outweigh any hardship or expense incident to the raising of the child.

■ In summary, this Court finds that the plaintiffs may be allowed provable damages only for the following:

1. The pain, suffering and discomfort of Doris Mae Coleman as a result of her last pregnancy; and

2. The cost of a tubal ligation; and

3. The loss to Leroy B. Coleman of the comfort, companionship, services and consortium of Doris Mae Coleman; however, the loss of consortium is limited to the loss

arising from pregnancy and immediately after birth; and

4. The medical expenses incurred by Mr. and Mrs. Coleman as a result of the 1968 pregnancy of Mrs. Coleman.

■ Since there is no evidence to the contrary, the defendants are entitled to summary judgment with respect to plaintiffs' allegations that the operation itself was performed improperly. There is nothing in the record that indicates that anyone acted negligently during the operation itself.

■ The general rule is that a surgeon is bound to the same standards of care and competence as other surgeons in good standing ordinarily adhere to in the same or a similar community. 41 Am.Jur., Physicians and Surgeons § 82; 70 C.J.S. Physicians and Surgeons § 43, p. 950. This general rule is also the law of Delaware. Christian v. Wilmington General Hospital, 11 Terry 550, 135 A.2d 727 (Del.Supr. 1957).

■ A physician is not an insurer of the success of his treatment nor does the mere absence of success of his treatment ordinarily establish the negligence or lack of skill of the physician who renders the treatment. Peters v. Gelb, 303 A.2d 685 (Del.Super.1973).

■ During the bilateral tubal ligation operation performed upon Doris Mae Coleman, a portion of each tube was, in fact, excised. Dr. William Slate, a board-certified obstetrician-gynecologist, stated in his affidavit that in approximately one-half per cent to two per cent of the cases where a bilateral tubal ligation is performed the patient does not become permanently sterile notwithstanding that the physician has performed the operation in a manner which conforms to the accepted standard of good medical practice and care within the Wilmington, Delaware, community or within similar communities throughout the United States.

In the case of DiFilippo v. Preston, 3 Storey 539, 173 A.2d 333 (Del.Supr.1961), it was held that res ipsa loquitur had no application in a case where evidence showed that injuries of the type complained of occurred in two per cent of the cases of the operation in question regardless of the degree of care used by the physician. For the same reason in the present case, since ensuing pregnancy does not necessarily indicate improper performance of the operation, res ipsa loquitur is not applicable.

■ It should be noted that plaintiffs have filed their own personal counter-affidavits but have not filed an affidavit by any medical expert. The personal affidavits of the plaintiffs do dispute the content of the conversations between Dr. Garrison and the plaintiffs.

However, these affidavits are not competent to show there is a genuine issue for trial in the areas of the proper performance of the operation, of the operations for sterilization available, of the other acceptable means of birth control available, of the determination of pregnancy or a cyst, and of the refraining from recommending the use of contraceptive devices after a bilateral salpingectomy.

■ The burden is on the plaintiffs, if they desire to demonstrate a genuine issue for trial, to present affirmative opposition through depositions, answers to interrogatories or affidavits to the facts and conclusions set forth in defendants' affidavits. Since the plaintiffs have not done so, they must suffer the consequences of having summary judgment entered on behalf of the defendants. Schagrin v. Wilmington Medical Center, C.A. 565, 1971 (Del.Super.1971).

■ Whether or not a physician or surgeon is under a duty to warn a patient of the possibility of a specific adverse result of a proposed treatment depends upon the circumstances of a particular case, and of the general practice with respect to such

cases followed by the medical profession in the locality. The custom of the medical profession to warn must be established by expert medical testimony. Fischer v. Wilmington General Hospital, 1 Storey 554, 149 A.2d 749 (Del.Super.1959) at p. 753; DiFilippo v. Preston, supra.

 The plaintiffs have not established by expert medical testimony the duty to warn in the medical procedure involved in this case.

In addition, Dr. Slate and Robert Lawson, Administrator of the Medical Center, clearly set forth in their affidavits that in accordance with accepted medical standards of good practice, the hospital had no duty to inform the patient of the alternatives and risks involved in the procedure at issue.

Thus, the defendants' motions in regard to the causes of action based on the failure to properly advise the plaintiffs must be granted.

The plaintiffs allege that careless and negligent representations were made by defendant Garrison which the plaintiffs relied upon.

In such an action, the plaintiff must allege and prove not only that the representation was false, but also that it was made with fraudulent intent. See Christensen v. Thornby, 192 Minn. 123, 255 N.W. 620 (1934).

Since there is no allegation of any such malicious intent, summary judgment is granted on this cause of action.

The plaintiffs also allege that defendant Garrison entered into an oral contract with Doris Mae Coleman and her husband whereby Dr. Garrison contracted, promised and guaranteed that he would sterilize Mrs. Coleman so that she could and would not become pregnant in the future. Dr. Garrison denies the contract and denies making any promise or warranty of sterility.

However, in order for such a contract to be enforceable, it must be express and supported by a separate consideration for the warranty. Gault v. Sideman, 42 Ill.App.2d 96, 191 N.E.2d 436 (1963).

In the present case, the only consideration involved was the usual fee for the bilateral tubal ligation. Since there was no additional consideration for the alleged warranty, this cause of action must fail.

In summary, for the reasons set forth above, the motion of the defendant, Wilmington Medical Center, Inc., and the motion of the defendant, George H. H. Garrison, are granted against the plaintiffs for each cause of action set forth by the plaintiffs in their complaint.

It is so ordered.