This is a medical malpractice case wherein the trial court granted summary judgment in favor of the defendant on the ground that plaintiff, Repsie Rhea Boone, is limited in her recovery of damages to the amount of the settlement with the hospital measured in terms of her actual medical expenses incurred in giving birth. Mrs. Boone appeals and we reverse.
In 1976, Repsie Rhea Boone visited Dr. M.M. Mullendore, complaining of cramps and bloating in her abdomen. On July 6, 1976, Mrs. Boone was admitted to Colbert County Hospital for exploratory surgery. During the surgery, Dr. Mullendore discovered and removed cysts in Mrs. Boone's Fallopian tubes and ovaries. After the surgery, Dr. Mullendore dictated an operative summary and procedure that stated that "the left and right [Fallopian] tubes were removed." Additionally, the plaintiff also alleges that Dr. Mullendore informed her that her Fallopian tubes had been removed and that she was sterile. As a result of this representation, Mrs. Boone did not use contraceptive methods. She became pregnant, however, and in April 1978 delivered a healthy child.
The Boones brought suit against Colbert County Hospital and Dr. Mullendore for negligently representing that her Fallopian tubes had been removed and that she was sterile, or, in the alternative, for negligent failure to remove the Fallopian tubes. Mrs. Boone sought compensatory damages for medical expenses and costs reasonably incurred in the rearing of the child. At the pretrial hearing, Mr. Boone withdrew as a party plaintiff and following the pre-trial hearing, Mrs. Boone reached a pro tanto settlement with the hospital for $1,500.00, which was conceded to be the amount of her medical expenses. Subsequently, Dr. Mullendore moved for, and the trial court granted, a summary judgment on the ground that, as a matter of law, Mrs. Boone could not recover more than the settlement amount for actual medical expenses incurred in giving birth. This appeal followed. *Page 720 
The issue on appeal is what damages may be recovered by a parent as a result of the negligent treatment, or the negligent misrepresentation of a doctor that the parent is incapable of having children. For the reasons set forth below, we hold that the trial court erred in limiting damages to out-of-pocket medical expenses.
Mrs. Boone contends that a health care provider should be subject to liability in damages for negligence that results in the wrongful birth of a child. At this point, it will be helpful to make distinctions in the terminology used by the parties. A claim for "wrongful birth" is one brought against a physician who "failed to inform parents of the increased possibility that the mother would give birth to a child suffering from birth defects . . . [thereby providing] an informed decision about whether to have a child." Phillips v.United States, 508 F. Supp. 544, 545 n. 1 (D.S.C. 1981) (quoting Comment, 8 Hofstra L.Rev. 257, 257-58 (1979)). A claim for "wrongful life" is one by which a child seeks recovery for being born with infirmities. See, Elliot v. Brown,361 So.2d 546 (Ala. 1978), wherein this Court refused to recognize a cause of action for "wrongful life." This case is, instead, more suited to a traditional medical malpractice, negligence action. In the court below, the plaintiff alleged that Dr. Mullendore was negligent in failing to remove her Fallopian tubes or, in the alternative, was negligent in representing that her Fallopian tubes had been removed and that she was sterile. Some jurisdictions have defined actions of this type as an action for "wrongful pregnancy."
The present action, therefore, is focused upon the issue of whether Dr. Mullendore negligently performed surgery upon Mrs. Boone and made misrepresentations to her as to her future capability to conceive a child, thus causing her to rely upon such statements and to become pregnant. A number of courts have been faced with this issue. See, Phillips v. United States,508 F. Supp. 544 (D.S.C. 1981); Custodio v. Bauer, 251 Cal.App.2d 303,59 Cal.Rptr. 463 (1967); Coleman v. Garrison, 349 A.2d 8
(Del. 1975); Wilczynski v. Goodman, 73 Ill. App.3d 51, 29 Ill.Dec. 216, 391 N.E.2d 479 (1979); Troppi v. Scarf,31 Mich. App. 240, 187 N.W.2d 511 (1971); Sherlock v. StillwaterClinic, 260 N.W.2d 169 (Minn. 1977); Betancourt v. Gaylor,136 N.J. Super. 69, 344 A.2d 336 (1965); Speck v. Finegold,268 Pa. Super. 342, 408 A.2d 496 (1979); Terrell v. Garcia,496 S.W.2d 124 (Tex.Civ.App. 1973), cert. denied, 415 U.S. 927,94 S.Ct. 1434, 39 L.Ed.2d 484 (1974); Rieck v. Medical ProtectiveCo., 64 Wis.2d 514, 219 N.W.2d 242 (1974).
In Alabama, in order to state a cause of action for negligence, the plaintiff must show that the defendant has a legal duty, that the defendant has breached that duty, that the defendant's breach proximately caused an injury, and that damages have resulted to the plaintiff. Quillen v. Quillen,388 So.2d 985 (Ala. 1980). It is also the law in Alabama that a physician owes a duty to exercise reasonable care in the treatment of his or her patients. Code 1975, § 6-5-484 (a). Therefore, if proven, the negligent misrepresentation of the nature of the surgery and/or such negligent performance of that surgery as would wrongfully cause a patient to become pregnant would be a breach of that duty.
Since the trial court granted the defendant's motion for summary judgment, we must initially state that the party moving for summary judgment must be entitled to a judgment as a matter of law, Fountain v. Phillips, 404 So.2d 614 (Ala. 1981); Butlerv. Michigan Mutual Insurance Co., 402 So.2d 949 (Ala. 1981), with all reasonable inferences concerning issues of material fact to be drawn in favor of the non-moving party. Papastefanv. B L Construction Co., 356 So.2d 158 (Ala. 1978). Assuming, without deciding, that the first three elements for a cause of action for negligence are met, the issue becomes whether the trial court erred in holding that Mrs. Boone could not recover more than the $1,500.00 in medical expenses paid to her by the hospital. We hold that the trial court erred in granting Dr. Mullendore's motion for summary judgment on the issue of damages. *Page 721 
Among the difficult issues in an action of this type is the measure of damages to be ascertained. Several theories have been proposed by other courts and by the parties to this action. Dr. Mullendore urges this Court to find that, as a matter of law, the benefits accruing to the parents of a healthy child outweigh the economic and emotional detriment of having an unwanted, unanticipated child. See, e.g., Terrell v.Garcia, 496 S.W.2d 124 (Tex.Civ.App. 1973), cert. denied,415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974); Rieck v.Medical Protective Co., 64 Wis.2d 514, 219 N.W.2d 242 (1974). Under this theory the holding of the trial court would have to be affirmed.
In California, it has been held that all costs and expenses of rearing such a child, and also emotional distress, are recoverable. Custodio v. Bauer, 251 Cal.App.2d 303,59 Cal.Rptr. 463 (1967). A third view of damages is that the parents may recover only damages for pregnancy-related costs and expenses, and damages for pain and suffering. Wilbur v.Kerr, Ark., 628 S.W.2d 568 (1982); Coleman v. Garrison,349 A.2d 8 (Del. 1975).
The fourth view of damages, which is urged by the appellant, is known as the "benefit" rule of damages. Under the "benefit" rule, parents may recover for damages proximately caused by the physician's negligence, including pregnancy-related expenses and the economic damages to the family resulting from the birth and rearing of the additional child. These damages may be offset, however, by the benefits accruing to the family as a result of the child's birth. Sherlock v. Stillwater Clinic,260 N.W.2d 169 (Minn. 1977). See also, Restatement (Second) ofTorts, § 920 (1977). Mrs. Boone contends that the losses and benefits resulting from a wrongful pregnancy are relatively tangible and are measurable factors for the jury to consider separately. We cannot agree.
Today, we adopt as the measure of damages in an action of this type essentially the standard set out in Coleman v.Garrison, 327 A.2d 757 (Del.Super.Ct. 1974), aff'd, 349 A.2d 8
(Del. 1975). This Court believes that damages should be limited to the actual expenses and the injury attending the unexpected pregnancy. Thus, the damages recoverable would include: (1) The physical pain and suffering, and mental anguish of the mother as a result of her pregnancy; (2) the loss to the husband of the comfort, companionship, services, and consortium of the wife during her pregnancy and immediately after the birth; and (3) the medical expenses incurred by the parents as a result of the pregnancy. Any additional damages would tend to be extremely speculative in nature, and awarding such damages could have a significant impact on the stability of the family unit and the subject child.
As indicated, numerous courts have addressed these issues in recent years and have come to various conclusions. A large number, however, have held that for public policy and other reasons the expenses of rearing a child to the age of majority should be denied. Wilbur v. Kerr, Ark., 628 S.W.2d 568 (1982);Coleman v. Garrison, 327 A.2d 757 (Del.Super.Ct. 1974), aff'd,349 A.2d 8 (Del. 1975); Wilczynski v. Goodman, 73 Ill. App.3d 51, 29 Ill.Dec. 216, 391 N.E.2d 479 (1979); Stewart v. LongIsland College Hospital, 35 A.D.2d 531, 313 N.Y.S.2d 502
(1970), aff'd, 30 N.Y.2d 695, 283 N.E.2d 616, 332 N.Y.S.2d 640
(1972); Hays v. Hall, 477 S.W.2d 402 (Tex.Civ.App. 1972); Rieckv. Medical Protective Co., 64 Wis.2d 514, 219 N.W.2d 242
(1974). The cornerstone of this denial is the idea that a normal healthy life should not be the basis for a compensable wrong. "The existence of a normal, healthy life is an esteemed right under our laws, rather than a compensable wrong."Wilczynski v. Goodman, 29 Ill.Dec. at 224, 391 N.E.2d at 487. As one court has stated:
 "To permit the parents to keep their child and shift the entire cost of its upbringing to a physician who failed to determine or inform them of the fact of pregnancy would be to create a new category of surrogate parent. Every child's smile, every bond of love and affection, every reason for parental pride in a child's achievements, every contribution by the child to the welfare and well-being *Page 722 
of the family and parents, is to remain with the mother and father. For the most part, these are intangible benefits, but they are nonetheless real. . . . We hold that such result would be wholly out of proportion to the culpability involved, and that the allowance of recovery would place too unreasonable a burden upon physicians, under the facts and circumstances here alleged."
Rieck v. Medical Protective Co., 219 N.W.2d at 244-45.
The birth of a healthy child, and the joy and pride in rearing that child, are benefits on which no price tag can be placed. This joy far outweighs any economic loss that might be suffered by the parents. Wilbur v. Kerr, Ark., 628 S.W.2d 568
(1982).
 "A child is born — how can it be said within the ambit of legal predictability that the monetary cost of that life is worth more than its value? We recognize that a few courts, approaching the problem in clinical terms, have applied a `balancing test' which, presumably, permits a jury to say that a life has been weighed and found wanting and thus the parents have been `damaged'. See 27 A.L.R.3d Annot.:
906 and the discussion of the cases in Terrell v. Garcia, Tex.Civ.App., 496 S.W.2d 124 (1973). We respect the efforts of other Courts to provide a remedy under the circumstances but it seems to us that that kind of judgment, if appropriate at all in an American Court of law, might be applied at the end of a life, after it has been lived and when the facts can be identified. But, in our view, any attempt to apply it at birth can only be an exercise in prophecy, an undertaking not within the speciality of our fact-finders."
Coleman v. Garrison, 349 A.2d 8 (Del. 1975). In Terrell v.Garcia, 496 S.W.2d 124 (Tex.Civ.App. 1973), cert. denied,415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974), the Texas Court of Civil Appeals succinctly spelled out the inherent problems of the "benefits rule" advocated by the plaintiff. That court stated:
 "Irrespective of the public policy view, adoption of the `benefits rule' as suggested by Troppi, would present unsurmountable problems of proof under our present standards for proof of damages. Proof could undoubtedly be offered regarding the cost of care and maintenance for a hypothetical child, although the standard of living and extent of education to be provided such child would undoubtedly require considerable conjecture and speculation by the trier of facts.
. . . .
 ". . . Nevertheless, as recognized in Hays and Troppi, the satisfaction, joy and companionship which normal parents have in rearing a child make such economic loss worthwhile. These intangible benefits, while impossible to value in dollars and cents are undoubtedly the things that make life worthwhile. Who can place a price tag on a child's smile or the parental pride in a child's achievement? Even if we consider only the economic point of view, a child is some security for the parents' old age. Rather than attempt to value these intangible benefits, our courts have simply determined that public sentiment recognizes that these benefits to the parents outweigh their economic loss in rearing and educating a healthy, normal child."
496 S.W.2d at 127-28. To allow damages under the "benefit rule" as urged by Mrs. Boone, would only invite speculative and ethically questionable assessments of damages that in the long run would cause a great emotional impact on the child, its siblings, and the parents.
Another problem is the possible harm that can be caused to the unwanted child who will one day learn that he not only was not wanted by his or her parents, but was reared by funds supplied by another person. Some authors have referred to such a child as an "emotional bastard" in a realistic, but harsh, attempt to describe the stigma that will attach to him once he learns the true circumstances of his upbringing. 50 Cin.L.Rev.
65 (1981); Wilbur v. Kerr, Ark., 628 S.W.2d 568 (1982). Mrs. Boone, however, contends that such damages are not for the *Page 723 
child, but are, as stated by the Illinois Court of Appeals inDoerr v. Villate, 74 Ill. App.2d 332, 220 N.E.2d 767
(Ill.Ct.App. 1966), "to replenish the family exchequer so that a new arrival will not deprive other members of the family of what was planned as their just share of family income." We cannot agree. If the "benefit rule" is adopted, it will place the parent in the win-lose situation that if they admit that the child is a welcome addition and that they will love the child and rear it properly, they may get no damages at all. It would thus be to their advantage, at least monetarily so, to deny any affection for the child and to emphasize all of the economic problems the child will cause, thus increasing damagesand the possibility of emotional trauma in the child at the time he or she learns of the earlier court proceedings.
This dilemma leads to several more problems in the assessment of damages. First, in Alabama one seeking to hold another liable for damages is required to use reasonable efforts to avoid or mitigate his or her damages. Bates v. General SteelTank Co., 36 Ala. App. 261, 55 So.2d 213, cert. dismissed,256 Ala. 466, 55 So.2d 218 (1951). Yet courts recognizing this cause of action have rejected the argument that parents should choose among the various methods of mitigation — adoption, abortion, etc. — seeing the moral issues begin to make inroads into an already emotional and speculative process of determining damages. The issue is one "which meddles with the concept of life and the stability of the family unit." Wilburv. Kerr, 628 S.W.2d at 571.
Another problem arises in regard to the damages that may be awarded — namely, what to do with the money recovered. If damages are awarded for the care and maintenance of the child, should the money go directly to the family to use as the parents see fit, should the money be placed in a special trust fund for the child, or should a guardian ad litem be appointed for the benefit of the child to insure that the money recovered actually goes to the rearing of the child?
As stated by the Supreme Court of Arkansas in Wilbur v. Kerr:
 "It is a question which meddles with the concept of life and the stability of the family unit. Litigation cannot answer every question; every question cannot be answered in terms of dollars and cents. We are also convinced that the damage to the child will be significant; that being an unwanted or `emotional bastard,' who will some day learn that its parents did not want it and, in fact, went to court to force someone else to pay for its raising, will be harmful to that child. It will undermine society's need for a strong and healthy family relationship. We have not become so sophisticated a society to dismiss that emotional trauma as nonsense."
628 S.W.2d at 571.
We must emphasize that our holding is in the restricted context of a healthy, though unplanned and unexpected, child. Nothing in this opinion should be construed as addressing, or commenting upon, the measure of damages attendant with a right of action, if any, in favor of the parents of a child, in an action of this type, when the child is born and afflicted withpredetermined or readily foreseeable genetic or hereditarydefects.
In conclusion, this Court holds that there is no viable reason for exempting a physician from liability when his negligence proximately and wrongfully causes a patient to become pregnant. Because the issues of negligence and proximate cause are generally questions of fact for the jury, and because we hold that the trial court erred in limiting the amount of damages recoverable to the out of pocket expenses of delivering, the holding of the trial court is reversed and the cause remanded. If, at trial, liability is established, the damages recoverable by the plaintiffs include: (1) compensation for the physical pain and suffering, and mental anguish of the mother as a result of the pregnancy; (2) the loss to the husband of the comfort, companionship, services, and consortium of the wife during her pregnancy and immediately after the birth; and (3) the medical expenses incurred as a result of the pregnancy.
REVERSED AND REMANDED. *Page 724 
MADDOX, ALMON, SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.
FAULKNER, JONES and SHORES, JJ., concur specially.
Though Justices SHORES and BEATTY did not sit during oral argument, tapes of oral argument and the briefs of the parties have been made available and have been studied carefully by them.