**Nancy BEARDSLEY, et al., Fannie Jo Counts, et al., Appellants (Plaintiffs),**

v.

**John WIERDSMA, M. D.; Memorial Hospital of Sweetwater County, Rock Springs, Wyoming; and Davol, Inc., a Delaware Corporation, Appellees (Defendants).**

**Nos. 5662, 5672.**

Supreme Court of Wyoming.

Sept. 3, 1982.

P. Richard Meyer of Spence, Moriarity & Schuster, Jackson, for appellants.

R. R. Bostwick of Murane & Bostwick, Casper, for appellee John Wierdsma.

Joseph E. Vlastos of Vlastos, Reeves & Murdock, P. C., Casper, for appellee Memorial Hosp. of Sweetwater County.

T. Michael Golden of MacPherson, Golden, Brown, & Dirck, Rawlins, for appellee Davol, Inc.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

This case involves two separate actions which were consolidated for review. Appellants filed suit against the appellees seeking damages resulting from unsuccessful tubal ligations. There are several categories of appellants here.

Eighteen appellants had tubal ligations so that they would become sterile, but instead became pregnant. They were plaintiffs below. At the time of the suits eleven of these appellants had given birth to healthy, normal children; three of the appellants were pregnant; and four of the appellants had terminated their pregnancies.

The husbands of the female appellants were also plaintiffs below and are appellants here. The women who did not terminate their pregnancies, together with their husbands, brought a cause of action which is styled as a "wrongful birth" action, although it is· sometimes denominated a "wrongful pregnancy" action. It is essentially a medical malpractice action. The husbands and wives who became parents or were to become parents were also plaintiffs below on behalf of the children in another action which is denominated a "wrongful life" action.

Appellees here are Dr. Weirdsma, who performed the tubal ligations; Memorial Hospital of Sweetwater County, where the operations were performed; and Davol, Inc., which manufactured the cauterization instrument used in the surgery.

In their complaints, appellants alleged various acts of negligence against the three appellees. They also alleged breach of warranty against Davol, Inc. Intermingled in the appellants' tort claims are allegations that apparently were designed to state a cause of action for breach of contract. The trial judge granted judgment on the pleadings in favor of all appellees.

Appellants stated the issues as follows:

"1. Was it error for the trial court to grant judgment on the pleadings when the Plaintiffs' complaint alleged that Defendants' medical negligence caused Plaintiffs to become pregnant and thereafter to sustain emotional distress, medical expenses, alteration of lifestyle and other damages?

"2. Can the Defendants exempt themselves from the application of traditional tort law doctrines by arguing that the pregnancies, children and abortions caused by their conduct created a 'benefit' to Plaintiffs which, as a matter of law, outweighs the detrimental results of their negligence?

"3. Are the Plaintiffs, who sustained medical expenses, pain, emotional trauma, changes in lifestyle and additional costs which are attributable to the Defendants' negligence, entitled to have those damages determined by a jury and not upon a motion for judgment on the pleadings?"

We will affirm in part, reverse in part and remand.

I

■ The "wrongful life" action asserted by the parents on behalf of their children is an action for damages based on appellees' negligence which caused a particular child to be born. We hold that a cause of action for "wrongful life" under the circumstances here does not exist.

The vast majority of cases have refused to recognize a cause of action for "wrongful life" on behalf of a child based on the rationale that there is no legal right not to be born.[1]

The Alabama Supreme Court in *Elliott v. Brown*, Ala., 361 So.2d 546, 548 (1978) stated:

" * * * Fundamental to the recognition of such a cause of action [wrongful life] is the notion that the defendant has violat-

1. *Stills v. Gratton*, 55 Cal.App.3d 698, 127 Cal. Rptr. 652 (1976); *Gleitman v. Cosgrove*, 49 N.J. 22, 227 A.2d 689, 22 A.L.R.3d 1411 (1967); *Karlsons v. Guerinot*, 57 A.D.2d 73, 394 N.Y. S.2d 933 (1977); *Stewart v. Long Island Col-* *lege Hospital*, 30 N.Y.2d 695, 332 N.Y.S.2d 640, 283 N.E.2d 616 (1972); *Dumer v. St. Michael's Hospital*, 69 Wis.2d 766, 233 N.W.2d 372 (1975).

ed some legal right of plaintiff's and as a result she has suffered injury. * * *

\* \* \* \* \* \*

"We hold that there is no legal right not to be born and the plaintiff has no cause of action for 'wrongful life.'"

The few courts which have acknowledged a cause of action for wrongful life have done so only for impaired children, and then usually because there was a causal connection between the alleged negligence and the impairment. See *Park v. Chessin*, 60 A.D.2d 80, 400 N.Y.S.2d 110 (1977), modified to allow a cause of action only for "wrongful birth" in 46 N.Y.2d 401, 386 N.E.2d 807, 413 N.Y.S.2d 895 (1978). In *Turpin v. Sortini*, 31 Cal.3d 220, 182 Cal. Rptr. 337, 643 P.2d 954 (1982), the question was whether a child born with a hereditary affliction could maintain a tort action against a physician who negligently failed to advise the child's parents before the child's conception of the possibility of the hereditary condition, thereby depriving them of the opportunity to choose not to conceive the child.

The California Supreme Court stated: "In sum, we conclude that while a plaintiff-child in a wrongful life action may not recover general damages for being born impaired as opposed to not being born at all, the child—like his or her parents—may recover special damages for the extraordinary expenses necessary to treat the hereditary ailment."

We know of no cases recognizing a "wrongful life" cause of action under the circumstances of this case. The district judge was correct in dismissing the wrongful life claims.

## II

The principal issue in this case is whether the parents have a cause of action in their own right for "wrongful birth" against appellees, assuming that fault on appellees' part led to the birth of an unplanned, yet normal and healthy child.

Appellants seek damages against appellees as follows:

"1. For actual expenses to be incurred in the future which have been occasioned by the birth of minor children in question including medical and hospital care during delivery, actual costs of raising such children including medical expenses, expenses for general care and maintenance and other similar expenses.

"2. For the reasonable value of the mental anguish sustained by appellants by reason of wrongful conduct of appellees including interference with the lifestyle decisions made by appellants and for the emotional distress occasioned by changes in the future plans of the appellants and in the case of the appellants who have had abortions the reasonable value of such emotional distress.

"3. For punitive damages against Dr. Wierdsma in a reasonable sum.

"4. For such other and further relief as the court deems proper in the premises together with appellants' costs incurred herein."

Courts which have considered "wrongful birth" cases have reached four different positions concerning damages when a normal, healthy child is born. Because this is a relatively new area of medical malpractice law, we will discuss each of these four positions on damages.

The first view is that the parents have no right to recover any damages or expenses for the performance of unsuccessful sterilization operations. Some earlier cases held that despite any finding of negligence, breach of contract, or misrepresentation on the part of a physician or surgeon, no damages resulted from the birth of a normal child through normal delivery with no permanent harm to the mother. One case was based on the grounds that the gift of a normal child could not be considered an injury to the parents and that in any event, the granting of damages on such grounds would be against public policy. *Shaheen v. Knight*, 11 Pa.D. & C. 41, 6 Lycoming R. 19 (1957). In *Ball v. Mudge*, 64 Wash.2d 247, 391 P.2d 201 (1964), the court decided that the jury, as reasonable persons, might well have concluded that the parents suffered no

damage in the birth of a healthy child and that the costs incidental to the birth were far outweighed by the blessing of a child. The court did not, however, go so far as to state that damages would be against public policy as a matter of law.

We are not aware of any recent cases that deny all damages to parents; provided, of course, that negligence, causation and damages are properly proved.

The second view is that the parents have a right to recover all damages and expenses, including the cost of rearing the child. Some courts which have allowed damages for the cost of rearing a healthy child seem to have based their decisions on the fact that the right to limit procreation through contraception and through a limited right to abortion is within a constitutionally protected "zone of privacy." In *Cockrum v. Baumgartner*, 99 Ill.App.3d 271, 54 Ill.Dec. 751, 425 N.E.2d 968, 970 (1981), two cases involving unsuccessful sterilization attempts were consolidated on appeal. The court in allowing damages, including rearing and education expenses, said:

"* * * That right is legally protectible and need not be justified or explained. The allowance of rearing costs is not an aspersion upon the value of the child's life. It is instead a recognition of the importance of the parent's fundamental right to control their reproductivity. [Citation.] We cannot endorse a view that effectively nullifies this right by providing that its violation results in no injury. * * *"

The third view is that parents have a right to recover all expenses and damages incurred or to be incurred resulting from the birth of an unplanned child, subject to an offset for the benefits that will be enjoyed by the parents. This concept is sometimes called the "benefit-rule." In adopting the "benefit-rule," some courts have applied Restatement, Second, Torts, § 920, p. 509 (1979).

"When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable."

In applying the "benefit-rule," if fault is found, the trier of fact determines all expenses and damages incurred and to be incurred by the parents, including costs of rearing the child, and then makes a deduction for benefits the child brings to the parents. *Ochs v. Borrelli*, 187 Conn. 253, 445 A.2d 883 (1982).

The fourth view is that parents have a right to recover all damages and expenses occurring because of the pregnancy and birth, but that they have no right to recover the costs of rearing the child. The courts which do not allow recovery for the expense of rearing an unplanned child do so for a number of policy reasons, any one of which is sufficient to deny recovery: 1) The injury is too remote from the negligence; or 2) the injury is wholly out of proportion to the culpability of the tortfeasor; or 3) allowance of recovery would enter a field that has no just or sensible stopping point; or 4) that the benefits of having a child outweigh any economic loss which parents might incur in rearing and educating a healthy child. *Rieck v. Medical Protective Company of Fort Wayne, Indiana*, 64 Wis.2d 514, 219 N.W.2d 242 (1974).

A summary of the development and state of the law was made in *Phillips v. United States*, 508 F.Supp. 544, 549 (D.S.C.1980).

"* * * [S]ix jurisdictions have considered 'wrongful birth' claims in approximately fifteen reported decisions, with numerous other jurisdictions having considered 'wrongful pregnancy' claims. The majority of those cases—indeed, the overwhelming majority of the more recent cases—have recognized the validity of 'wrongful birth' claims; this trend is implicitly conceded by the defendants. Although some of the earlier decisions denied recovery, [Citations.] the jurisdictions that have reached the merits of the controversy are currently unanimous in their recognition of the cause of action. [Citations.] A similar trend is apparent

with 'wrongful pregnancy' claims. [Citation.] Despite a few recent cases to the contrary, [Citations.] 'wrongful pregnancy' actions 'have ... met with considerable success since 1967 [when the leading case of *Custodio v. Bauer*, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967) was decided]. Although the courts have not been in agreement on how to assess damages, the majority now allow recovery of some sort to the parents.' * * * "

■ Consistent with the majority of recent cases, we hold that parents who find themselves in the situation that appellants do here are entitled to recover some items of damages, provided they are able to prove negligence, causation, and damages. Our problem is in determining what items of damages are proper. A ruling denying any damages to appellants would render the medical profession immune from liability for negligent treatment of patients seeking to limit the size of their families. " * * * Non-recognition of any cause of action for wrongful conception leaves a void in the area of recovery for medical malpractice and dilutes the standard of professional conduct and expertise in the area of family planning, which has been clothed with constitutional protection. * * * " *Kingsbury v. Smith*, N.H., 442 A.2d 1003, 1005 (1982).

*Coleman v. Garrison*, Del.Super., 327 A.2d 757 (1974) addresses the problem of compensible damages.[2] In that case the issue was whether a cause of action existed against defendants, assuming that fault on their part led to the birth of an unplanned, yet normal and healthy child. The Delaware Superior Court denied damages for the emotional, as well as for the pecuniary cost, of rearing an unplanned child, saying:

"Limitation of the cause of action in such a manner is valid since to do otherwise, would be to invite unduly speculative and ethically questionable assessments of such matters as the emotional effect of a birth on siblings as well as parents, and the emotional as well as pecuniary costs of raising an unplanned and, perhaps, an unwanted child in varying family environments. Speculative damages are, quite simply, not recoverable in this State. [Citations.]"

■ We hold that provided appellants prove fault, they are entitled to submit to the trier of fact expenses and damages for 1) recovery of any medical expenses associated with the unsuccessful ligation, such as surgical expense, hospital expense, physicians' fees, and expense of medication, 2) medical and hospital expenses for the birth of the unplanned child, 3) wages necessarily lost by the woman because of pregnancy and childbirth or because of an abortion, 4) pain and suffering of the mother in connection with pregnancy, and 5) cost of abortion, together with pain and suffering of the women who elected to have their pregnancies terminated.

We reject any claim for damages or expenses after the birth of the child. We believe that these latter expenses and damages are too speculative; that the injury is too remote from the negligence; that the injury is out of proportion to the culpability of the tortfeasors; and that the allowance of recovery would place too unreasonable a burden on appellees, since it would likely open the way for fraudulent claims, and since it would enter a field that has no sensible or just stopping point.

We specifically reject the "benefit-rule" or offset concept.

" * * * The preciousness of human life should not be held to vary with the circumstances surrounding birth. To make such a determination would, indeed, raise the unfortunate prospect of ruling, as a matter of law, that under certain circumstances a child would not be worth the trouble and expense necessary to bring him into the world. * * * " *Coleman v. Garrison*, supra, at 761.

**2.** *Boone v. Mullendore*, 416 So.2d 718 (Ala., 1982), adopted the measure of damages set out in *Coleman v. Garrison*, supra.

We believe that the benefits of the birth of a healthy, normal child outweigh the expense of rearing a child. The bond of affection between child and parent, the pride in a child's achievement, and the comfort, counsel and society of a child are incalculable benefits, which should not be measured by some misplaced attempt to put a specific dollar value on a child's life.

The benefit or offset concept smacks of condemnation law, where the trier of fact determines the value of the land taken by the condemnor. The trier of fact then determines the benefit that results to the land owner, which benefit is deducted from the original value to determine the proper award. If the concept of benefit or offset were applied to "wrongful birth" actions, we can conceive of the ridiculous result that benefits could be greater than damages, in which event someone could argue that the parents would owe something to the tortfeasors. We think that a child should not be viewed as a piece of property, with fact finders first assessing the expense and damage incurred because of a child's life, then deducting the value of that child's life. For that reason, we think Restatement, Second, Torts § 920, supra, has no application to "wrongful birth" actions.

We have said some things that were not necessary to this opinion. However, the apparent unnecessary matters are intertwined with necessary matters. "It is proper for the Supreme Court to decide incidental questions which are bound to arise again in the case." *Rocky Mountain Oil and Gas Association v. State*, 645 P.2d 1163 (Wyo., 1982).

We affirm the trial court's dismissal of the "wrongful life" action. We reverse the trial court's dismissal of the "wrongful birth" or "wrongful pregnancy" action, and remand the cases to the trial court for further proceedings consistent with this opinion.

ROSE, Chief Justice, specially concurring.

I agree with the conclusion reached in the majority opinion which holds that under the circumstances of this case no cause of action for "wrongful life" lies. I also agree with the majority opinion that the appellants have presented sufficient facts to state a claim which we have delineated as one for "wrongful pregnancy." As the majority opinion observes, a failure to recognize a cause of action for "wrongful pregnancy" in Wyoming would have been contrary to the great weight of authority. See: *Phillips v. United States*, 508 F.Supp. 544, 549 (D.S.C.1981). I do, however, feel that by refusing to allow the parties, on remand, to present evidence relating to the cost of rearing the children as a recoverable element of damages, the majority of the court have wrongfully denied the appellants the right to recover *all* of their provable damages. In other words, I am of the opinion that this court should adopt the "benefit approach" with respect to recovery of the cost of rearing a child in a "wrongful pregnancy" action.

For me, the cause of action which is urged in this appeal is the same as any other medical malpractice action. That is, I would have held that the plaintiffs-appellants must first establish that an act or omission by a physician has breached the applicable standard of care and that the breach was the proximate cause of the injury or damage suffered by them. *Harris v. Grizzle*, Wyo., 625 P.2d 747 (1981). Simply stated, a medical malpractice action is the same as any other negligence action and, upon proof of negligence, the plaintiff should be allowed to recover for any damages proximately caused by the negligence. *Vassos v. Roussalis*, Wyo., 625 P.2d 768, 772 (1981). The fact that this particular claim involves some moralistic and social overtones having to do with contraception and childbirth should not be permitted to become the handmaiden for the destruction of our established notions of tort law. As in all negligence cases, a plaintiff in a "wrongful pregnancy" action should be given the opportunity to prove any damage which is a direct or proximate result of the claimed negligence. In my judgment the majority opinion, for unsound reasons, deprives the appellants of the opportunity to establish

all of their possible damages, and I therefore file this specially concurring opinion.

To me, it is not arguable, nor does the majority opinion suggest, that the birth of the children in this case was not a proximate cause of the failed sterilization procedure. This point stands uncontested because the record reflects that all of the parties chose the tubal-ligation procedure, at least to some degree, out of a desire to control the size of their families. It is also fair to say that one of the foreseeable events to arise from the negligent performance of the operation is the unexpected pregnancy and later birth of an unplanned child. Considering the intent of the parties at the time that the tubal ligation procedure is chosen as a contraceptive measure, it follows that a direct and proximate result of the negligent performance of the operation can and most likely will be the mother's impregnation and the consequent birth of a child. Proximate cause is that which is a natural and probable consequence of an act of negligence, *Frazier v. Pokorny*, Wyo., 349 P.2d 324 (1960), rather than that which is extraordinary. Here, the unexpected pregnancy of the mother is a direct and proximate result of the negligent performance of the tubal ligation and the plaintiff appellants, should, therefore, be allowed to present evidence of damage flowing from the negligent acts.

As the majority opinion observes, the principal dispute in all of the reported "wrongful pregnancy" cases has to do with proving damages and, as further discussed, the courts have settled upon four theories. The first theory, espoused by the older cases, holds that parents may not recover damages for the negligent performance of a sterilization operation which results in the birth of a child, because of the view that, as a matter of law, the benefits of having the unplanned child in the family outweigh any possible damages which the parents could conceivably experience. *Shaheen v. Knight*, 11 Pa.D. & C.2d 41 (1957). How-

ever, such outdated views have given way to the recognition by most courts that, upon proof of negligent performance of the sterilization procedure, the parents could recover some form of compensation as damage. The split of authority arose out of the issue with which we are here concerned, namely, the right of the parents to recover damages for the costs associated with rearing the unplanned child to majority. One line of authority, which the majority members of this court have chosen to follow, permits the parents to present evidence of damages associated with the operation, term of pregnancy and subsequent birth; however, no damages for the costs of rearing the child are permitted to be proven. See: *Boone v. Mullendore*, Ala., 416 So.2d 718, (1982); *Coleman v. Garrison*, 349 A.2d 8 (Del.Supr. 1975); *Wilbur v. Kerr*, Ark., 628 S.W.2d 568 (1982). As a basic proposition, this theory of damages is, to some degree, bottomed in an antiquated public-policy notion which holds that the birth of a child is invariably a benefit that outweighs any economic detriment associated with raising the child to majority. On the other hand, some courts have recognized that as a matter of general tort principle the parents of unplanned children in a "wrongful pregnancy" action should be able to prove whatever damages flow from the wrongdoing including such damages as are associated with the costs of rearing the child to majority. With respect to this latter approach, two more views have arisen. The first of these permits the parents to recover *all* of the costs associated with raising the child to majority, without any offset for the benefits derived by the parents which inevitably result from their association with the child. See: *Cockrum v. Baumgartner*, 99 Ill.App.3d 271, 54 Ill. Dec. 751, 425 N.E.2d 968 (1981); *Custodio v. Bauer*, 251 Cal.App.2d 303, 59 Cal.Rptr. 463 (1967). The second approach allows recovery of all the costs associated with raising the child but requires an offset for the benefits derived by the parents from the parent-child relationship.[1] See: *Ochs v.*

---

1. This so-called "benefit rule" has been defined by the courts through an application of Re-

statement (Second) Torts, § 920, p. 509 (1979), which provides:

*Borrelli,* 187 Conn. 253, 445 A.2d 883 (1982); *Mason v. Western Pennsylvania Hospital,* 286 Pa.Supr. 354, 428 A.2d 1366 (1981); *Phillips v. United States,* supra; *Sherlock v. Stillwater Clinic,* Minn., 260 N.W.2d 169 (1977); *Troppi v. Scarf,* 31 Mich.App. 240, 187 N.W.2d 511 (1971). This last-mentioned approach, as noted in the majority opinion, is sometimes referred to as the "benefit rule."

In my opinion, considering my previous conclusion that the birth of the unplanned child is a proximate cause of a negligent sterilization operation, the proper approach to a "wrongful pregnancy" claim is to recognize the right of the parent to recover, upon proof, the costs associated with rearing the child. I also believe that the more reasoned rule is that discussed by the previously outlined opinions adopting the "benefit rule."

As mentioned earlier, the cases adopting the "benefit rule" for allowing the parents in a "wrongful pregnancy" case to recover the rearing costs for the "unplanned child" premise their holdings on a rejection of the proffered public-policy concept which holds that the birth of a child, as a matter of law, always results in greater benefit than cost to the parents. The rationale for the benefit rule was well stated in *Troppi v. Scarf,* supra, 187 N.W.2d at 517:

> "Contraceptives are used to prevent the birth of healthy children. To say that for reasons of public policy contraceptive failure can result in no damage as a matter of law ignores the fact that tens of millions of persons use contraceptives daily to avoid the very result which the defendant would have us say is always a benefit, never a detriment. Those tens of millions of persons, by their conduct, express the sense of the community."

Another family-planning concept relied upon by the courts has to do with the recent development in the law recognizing that questions of family size and procreation are personal decisions protected by privacy rights guaranteed by the United States Constitution. *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Thus, these courts conclude that adoption of a public-policy concept would impair the exercise of a constitutionally protected right. See *Troppi v. Scarf,* supra, 187 N.W.2d at 519; *Ochs v. Borrelli,* supra, 445 A.2d at 885. In simplified terms, these decisions recognize that current trends and developments in the areas of family planning and contraception make invalid the assertion of a "public policy" exception to recoverable damages for the negligent performance of a sterilization operation that results in the birth of unplanned children. The cases also recognize that a stronger public-policy argument can be made in favor of the need to prevent the negligent performance of operations no matter what their character. *Boone v. Mullendore,* supra, 416 So.2d at 725 (Faulkner, specially concurring); *Troppi v. Scarf,* supra, 187 N.W.2d at 517.

Likewise, these same cases reject the position taken by a majority of this court which holds that the costs and benefits associated with raising a child are so speculative that a jury is incapable of fixing damages. The Supreme Court of Connecticut, in *Ochs v. Borrelli,* supra, 445 A.2d at 886, said:

> "Although we recognize that this balancing test requires the jury to mitigate economic damages by weighing them against noneconomic factors, we reject the defendants' claim that such a weighing process is 'impermissibly speculative.' We see no basis for distinguishing this case from other tort cases in which the trier of fact fixes damages for wrongful death; * * * or for loss of consortium." (Citations and footnotes omitted).

I agree with the Connecticut court. I must say that it seems strange to me that

"When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable."

the majority of our court would suggest that Wyoming has a public policy which precludes the parents from receiving compensation for the costs of rearing the children upon proper proof. I hazard the suggestion that such a view can only be derived from the personal sensibilities of each member of the court rather than from a formulated public policy. This becomes the more obvious when it is noted that the Wyoming legislature has provided for state assistance in areas of family planning and birth control.[2] Furthermore, it has always been the policy of this state and its court system to provide relief to those injured by tortfeasors and to authorize compensation for damages proximately caused by acts of negligence. To deprive the plaintiffs, in the present case, the opportunity of proving and receiving compensation for all their damages contravenes this most basic policy. Finally, I reject the majority opinion's holding that proof of damages of the costs and benefits associated with raising the child are too speculative to permit their recognition. The law of this state already permits jury speculation to some degree when computations for damages for wrongful death,[3] pain and suffering or loss of enjoyment of life[4] are considered. I can see no meaningful difference between the damages claimed here and those which we have said may be weighed and determined by the triers of fact in other damage actions. Wyoming law does not require that damages be proved with mathematical accuracy but only with a reasonable degree of certainty, and speculative issues must be dealt with on a case-by-case basis, *Douglas Reservoirs Water Users Association v. Cross*, Wyo., 569 P.2d 1280 (1977); *Wheatland Irrigation District v. McGuire*, Wyo., 562 P.2d 287 (1977), and not by a general proscription which has the effect of defeating a party's right even to raise the question of damages.

I would here suggest why the "benefit rule" is the most tenable solution to the damage issue structured by this case.

First off—as has been noted—the "benefit rule" is premised upon the proposition that the birth of an unplanned child can be a proximate result of a negligently performed sterilization operation. Secondly, the "benefit-rule" acknowledges that there is no sound reason for not allowing the parents to recover as an element of damage the costs associated with rearing the child to majority in a wrongful-pregnancy case. These factors are also recognized by those courts who have adopted the approach permitting the parents to recover all of the costs without any offset for the benefits received. See: *Cockrum v. Baumgartner*, supra. However, unlike the latter holdings, the courts adopting the "benefit rule" recognize that various tangible and intangible benefits accrue to the parents of the child and, therefore, to prevent unjust enrichment, these benefits should and can be weighed by the trier of fact in computing damages. *Boone v. Mullendore*, supra, 416 So.2d at 726 (Faulkner, specially concurring). In other words, through application of the "benefit rule" the courts give recognition to the philosophy that the costs and benefits associated with the introduction of an unplanned child to the family will vary depending upon the circumstances of the parents. As was stated in *Troppi v. Scarf*, supra, 187 N.W.2d at 519:

"The essential point, of course, is that the trier must have the power to evaluate the benefit according to all the circumstances of the case presented. Family size, family income, age of the parents, and marital status are some, but not all, the factors which the trier must consider in determining the extent to which the birth of a particular child represents a benefit to his

---

2. See §§ 35–14–101 through 35–14–106 for the applicable statutory provisions.

3. In *Coliseum Motor Co. v. Hester*, 43 Wyo. 298, 3 P.2d 105 (1931) we determined that the loss of society, care and comfort of the deceased was a compensable element of damages in a wrongful-death action. Also, present

§ 1–38–102, W.S.1977, Cum.Supp.1982, provides that recovery can be had for companionship, society, and comfort.

4. For a discussion of damages for loss of enjoyment of life see *Mariner v. Marsden*, Wyo., 610 P.2d 6 (1980).

parents. That the benefits so conferred and calculated will vary widely from case to case is inevitable."

By recognizing these considerations, the "benefit rule" encourages and entrusts the trier of fact with the responsibility of weighing and considering all of the factors associated with the birth of the unplanned child in a given "wrongful pregnancy" case. For me, it is the soundest approach for dealing with the right of the parents to prove their damages caused by the unplanned birth of a child without, at the same time, uprooting the law of tort damages.

As a final note, it also occurs to me that the laundry list of damages recited in the majority opinion fails to include a number of recoverable damages recognized by the law of Wyoming. For instance, although we recognized in *Mariner v. Marsden*, Wyo., 610 P.2d 6 (1980) the right of a plaintiff to prove damages for loss of enjoyment of life, the majority opinion in this case does not include this element of damage in the list of recoverable damages. It is now settled in this state that loss of enjoyment of life is a recognized element of damage in any negligence case and the plaintiffs in the case at bar should have the opportunity to claim and prove the same. Also, in *Bates v. Donnafield*, Wyo., 481 P.2d 347 (1971) this court recognized the common-law right of a husband to recover for loss of consortium and that the facts underlying the plaintiff's claim should permit them to admit evidence with respect to this element of damage.[5]

For the foregoing reasons, I would have held that the parents are entitled, under their "wrongful pregnancy" claim, to recover damages associated with rearing the children to majority, said damage claims to be submitted to the trier of fact under the "benefit rule" discussed herein. I therefore concur in the majority opinion only insofar

as a cause of action for "wrongful pregnancy" is recognized, but I would have permitted the appellants, on remand, to admit evidence of all damages proximately caused by the appellee's alleged negligence, instead of just part of them.

ROONEY, Justice, concurring in part and dissenting in part.

I would affirm the district court in all respects. I concur with the majority opinion relative to the nonexistence of the "wrongful life" claim. I also agree with the majority opinion with reference to the "wrongful birth" or "wrongful pregnancy" claim that the attributes of a child result in "incalculable benefits" to the parents. The benefits are incalculable because of their magnitude. This fact makes it impossible to establish *any* damage to the parents sufficient to offset the benefits. See Restatement of Torts (Second), § 920. Accordingly, the "wrongful birth" or "wrongful pregnancy" claim also does not exist.

---

5. I would note that we also held in Bates that a wife at common law could not recover for loss of consortium, and, in the absence of a statute, such was not a recoverable damage in Wyoming. However, recently the United States District Court, District of Wyoming, in a learned and far-reaching opinion authored by

United States District Judge Brimmer, held that such a rule was unconstitutional. *Sheeler v. Trans-Chem, Inc.*, 520 F.Supp. 117 (D.C.Wyo. 1981). Such questions as were dealt with by Judge Brimmer are not, however, presented for review in the case at bar.