**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

JEANINE OBILOR, )
)
        Plaintiff, )
)    C.A. No.: N19C-02-174 DCS
    v. )
)
E. I. DUPONT DE NEMOURS )
AND COMPANY, )
)

        Defendants.

Submitted: November 16, 2020
Decided: January 7, 2021

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**GRANTED**

**OPINION AND ORDER**

Jeanine Obilor (Argued), Baltimore, Maryland, *Pro-se Plaintiff.*

Eileen K. Keefe, Esquire (Argued), Bianca N. Ioozia, Esquire, Stephanie J. Peet, Esquire, Jackson Lewis P.C., Philadelphia, Pennsylvania, Lauren E.M. Russell, Esquire, Adria Martinelli, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, Delaware, *Attorneys for Defendant E.I. DuPont De Nemours and Company*

**Jones, J.**

Plaintiff Jeanine Obilor (hereinafter "Obilor" or "Plaintiff") has brought the instant lawsuit against Defendant E. I. DuPont De Nemours and Company (hereinafter "DuPont" "Defendant" or the "company") for alleged violations of Delaware's Persons with Disabilities Employment Protections Act (hereinafter "DEPA") in connection with her termination from DuPont.[1] Ms. Obilor was employed by DuPont from April 2015 to May 2017 as a Sourcing and Logistics Consultant. Obilor initially worked onsite at DuPont's offices in Wilmington, Delaware.

Obilor became pregnant towards the end of 2015 and thereafter took an extended medical leave from DuPont starting in May of 2016.[2] When Obilor returned to work, she presented her supervisors at DuPont with notes from her physician indicating that she would be unable to work onsite at DuPont's offices due to certain disabilities stemming from her pregnancy, and recommending that she should be allowed to work remotely on a full-time basis for an indefinite period of time. DuPont determined that the essential functions of Obilor's job did not permit her to work from home on a full-time basis, and that no reasonable accommodation could be made that would allow Obilor to perform her essential job duties remotely. The company also determined that it did not have alternative positions available

---

[1] It is unclear from Plaintiff's Complaint whether plaintiff is making a claim under the Americans with Disabilities Act ("ADA"). As demonstrated below, claims under DEPA and the ADA are evaluated according to the same standard. As such, the Court's instant ruling on the DEPA claim would apply to a claim under the ADA as well.
[2] Def. Mot. For Summ. J. at 1.

2

which would allow Obilor to work remotely on a full-time basis. After making these determinations, DuPont terminated Obilor's employment.

Obilor claims that DuPont refused to make a reasonable accommodation for her disabilities and also failed to engage in an interactive process to explore possible accommodations for her disability, in violation of DEPA. DuPont asserts that it complied with the requirements of DEPA and appropriately terminated Ms. Obilor's employment. DuPont claims that it engaged in an interactive process to determine whether it was possible to accommodate Plaintiff's disability and whether the company had alternative employment positions available. DuPont concluded that Obilor could not perform the essential duties of her job by working remotely on a full-time basis, that no reasonable accommodation was available to address her disability status, and that it had no alternative job positions that would allow Plaintiff to work remotely on a full-time basis available.

DuPont has moved for summary judgment pursuant to Superior Court Rule of Civil Procedure 56, arguing that its termination was proper and that it complied with the requirements of DEPA. For the reasons that follow, DuPont's motion for summary judgment is **GRANTED**.

## FACTUAL BACKGROUND

The following facts are drawn from the record in this litigation and are viewed in the light most favorable to Obilor as the Plaintiff.

3

Obilor was hired by DuPont in March 2015 as a Sourcing and Logistics Consultant.[3] Obilor's position supported various DuPont businesses and subsidiaries in order to ensure compliance with import/export governance policies that effected the company.[4] Obilor's written job description identified a number of functions associated with her position.[5] These functions included providing "timely and accurate responses to all inquiries from Customs Board Protection including CF 28s, audits and investigations and to communicate key information for U.S. and Canada cross border activity to business units and related shareholders."[6] The reference to audits refers to so-called "desk audits," which are external regulatory audits conducted by U.S. Customs authorities.[7] These audits are called "desk audits" because they require an auditor and a DuPont employee to review hardcopy files. In practice, this requires an auditor to physically sit at a DuPont employee's desk or cubicle and ask the employee questions, while the DuPont employee gathers the documentation needed to respond to the auditor's questions from his or her hardcopy files.[8] Some of the process could be performed remotely, but other aspects of the process had to be performed onsite at DuPont's offices in Wilmington, because "most of the answers [to audit inquiries] are going to be [located in] paper in the

---

[3] See App. To Def.'s Mot. For Summ. J. [hereinafter "App."] at A489-492 (Employment Agreement Dated 3/10/15).
[4] See App. At A496-497 (U.S. Import-Export Regulatory Specialist Job Requisition).
[5] App. At A430-431 (Miguel Gonzalez Deposition Transcript dated 2/13/20).
[6] App. At A496-497.
[7] App. At A588-596 (Answers and Objections to Plaintiff's Second Set of Interrogatories to Defendant dated 2/11/20).
[8] App. At A421-422 (Miguel Gonzalez Deposition Transcript dated 2/13/20).

4

drawers."[9] If the auditor could not be present in person, someone else would have to assume the essential task of gathering the necessary documents.[10]

Obilor became pregnant in late 2015.[11] In May 2016, Ms. Obilor requested and received a medical accommodation from DuPont allowing her to work from home for 2-3 days per week due to complications with her pregnancy.[12] As she approached her due date in August 2016, Plaintiff took an extended medical leave which lasted until November of 2016. Thereafter, Obilor utilized additional family leave time and remained out for an additional six-month leave of absence.[13]

When Plaintiff's medical leave and six-month family leave expired, she returned to work on April 25, 2017.[14] Upon returning to work, Plaintiff presented DuPont's medical department with a note from her primary care physician, Dr. Clara Anizoba, indicating that Obilor was restricted to working onsite for only one a day per week for an undefined period of time due to certain disabilities which Obilor had acquired following her pregnancy.[15] Dr. Anizoba's note stated that "the stress of travelling worsen[s] [Obilor's] condition."[16]

After receiving Dr. Anizoba's note, DuPont contacted Dr. Anizoba to request clarity on the nature of Obilor's work restriction and to inquire about how long Dr.

---

[9] *Id.* At A426.
[10] *Id*; App. At 597-598 (Declaration of Susan Shustack).
[11] Compl. ¶ 6.
[12] App. At A184-185; A220-221 (Jeanie Obilor Deposition Transcript dated 1/31/20).
[13] *Id.* At A195.
[14] App. At A501 (Clinic Visit Notes). During her leave of absence from DuPont, Plaintiff relocated her residence from Wilmington, Delaware to Baltimore, Maryland, where she has continued to reside.
[15] Def.'s Mot. Summ. J. at 8.
[16] *Id.*

5

Anizoba expected her condition to last.[17] In response to DuPont's request, Dr. Anizoba authored a second note on April 26, 2017 highly recommending that Obilor should work exclusively from home "until her symptoms improve." Dr. Anizoba's note also stated "I cannot put a time limit on how long it will take for [Obilor's condition] to improve."[18]

Over the next several days, members of DuPont's human resources department and several of Obilor's direct supervisors evaluated whether they would be able to accommodate Obilor's work restrictions.[19] On April 26, 2017, a team of DuPont personnel evaluated the essential functions of Obilor's position in light of her remote work restrictions during a telephone conference and through a series of subsequent emails.[20] The DuPont team responsible for evaluating Obilor's work status noted that her position required her to regularly attend face-to-face strategy meetings, and that promptly responding to requests for information from U.S. Customs authorities would require her to be physically present in DuPont's offices on a semi-regular basis.[21]

During this period, DuPont also prepared a comprehensive "Interactive Accommodation Review Template" which memorialized a conversation between Obilor and DuPont human resources representative Angel Dowling regarding the

---

[17] Clinic Visit Notes at A501.
[18] Def.'s Mot. Summ. J. at 9; A507 (Doctor's Note from Clara Anizoba, M.D. dated 4/26/17).
[19] App. A457-458 (Shustack and Dowling Emails re: Plan for Accommodation Template dated 4/27/17); A459-460 (Emails re: Response to Accommodation Request dated 4/26-27/17).
[20] App. At A448 (Appointment Notice for Formal Accommodation Review Scheduled for 4/26/17); A457-458.
[21] Miguel Gonzalez Transcript dated 2/13/20 at A401; App. At A451-458 (Interactive Accommodation Review Template dated 5/10/17).

nature of her medical restrictions and potential accommodations for them.[22]

Dowling ultimately concluded that allowing Obilor to work remotely full-time would "create an undue hardship" on DuPont because (i) Plaintiff was responsible for responding to daily mail requests from Customs authorities, which required prompt attention to avoid penalties, (ii) Plaintiff would not be able to perform desk audits remotely, and (iii) Plaintiff would not be able to engage in essential face-to-face interactions or strategy sessions while working remotely.[23] DuPont further determined that retaining an additional employee to assume Obilor's previous onsite job duties would cost greater than 5% of her annual salary.[24]

DuPont representatives also evaluated whether the company could transfer Plaintiff to a vacant position as a form of accommodation, and concluded that no suitable positions were available.[25]

DuPont representatives contacted Obilor on May 5, 2017, to inform her that the company would not be able to accommodate her medical conditions and that her employment with the company would be terminated.[26]

## STANDARD OF REVIEW

Under Superior Court Civil Rule 56, a party is entitled to summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to

---

[22] *Id.*
[23] *Id.*
[24] Declaration of Susan T. Shustack at A597-598.
[25] Interactive Accommodation Review Template dated 5/10/2017 at A451-456; App. At A449-450 (Shustack and Dowling Emails re: Effort to Accommodate in Alternative Position dated 5/1/17).
[26] App. At A487-488 (Gonzalez Termination Letter to Obilor dated 5/11/17).

7

a judgment as a matter of law.[27] A material issue of fact exists if "a rational finder of fact could find some material fact that would favor the nonmoving party in a determining way[.]"[28] The factual record on a summary judgement motion must be viewed in the light most favorable to the non-moving party.[29]

The initial burden is on the moving party to demonstrate there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[30] If the moving party meets the initial burden, the burden shifts to the non-moving party to show that a genuine issue of material fact exists[31] "It is not enough for the opposing party merely to assert the existence of such a disputed issue of fact. . . [i]f the facts permit reasonable persons to draw from them but one inference, the question is ripe for summary judgment"[32] Where a moving party submits an affidavit in support of a motion for summary judgment, the opposing party must submit a countervailing affidavit or other evidence, or the moving party's affidavit will be presumed to be true.[33]

## LEGAL FRAMEWORK

Delaware's employment discrimination laws are substantially the same as their federal counterparts, and it is appropriate to apply federal case law to

---

[27] Super. Ct. Civ. R. 56(c).
[28] *Deloitte LLP v. Flanagan*, 2009 WL 5200657, at *3 (Del. Ch. Dec. 29, 2009).
[29] *Gruwell v. Allstate Ins. Co.*, 988 A.2d 945, 947 (Del. Super. 2009).
[30] *Brzoska v. Olson*, 668 A.2d 1355, 1364 (Del. 1995).
[31] *Id.* (citing *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979)).
[32] *Id.* (citing *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967)).
[33] *Highline Financial Services, Inc. v. Rooney*, 1996 WL 663100, at *1 (Del. Supr. 1996).

discrimination claims raised under DEPA.[34] Indeed, Delaware courts have held that "the American with Disabilities Act provides the legal standards that control a DEPA claim."[35]

Federal law – and by extension DEPA – requires that employers provide reasonable accommodations for the known physical limitations of an otherwise qualified individual with a disability who is an employee.[36] A reasonable accommodation also includes the employer's reasonable efforts to assist the employee and to communicate with the employee regarding possible accommodations in good faith.[37] To ascertain whether a reasonable accommodation for an employee's disability is possible, courts have grafted a duty for employers to engage in the "interactive process" with employees onto the ADA.[38] In order to satisfy the interactive process requirement, both an employer and a disabled employee have a duty to assist in the search for an appropriate reasonable accommodation and to act in good faith when doing so.[39]

In this case, Obilor alleges that DuPont (1) failed to provide her with a reasonable accommodation for his disability, and (2) "failed to engage in the interactive process." I turn first to the accommodation claim.

---

[34] *Tolliver v Delmarva Found. For Med. Care*, 2019 U.S. Dist. Lexis 149115 (D. Del. Sept 3, 2019).
[35] *Wilgus v Bayhealth Med Ctr, Inc.*, 2018 Del Super LEXIS 1768.
[36] 42 U.S.C. §12129(b)(5)(A).
[37] *Mengine v Runyon*, 114 F.3d 415 (3d Cir 1997).
[38] *Williams v. Phila. Hous, Auth. Police Department*, 380 F.3d 751 (3rd Cir 2004).
[39] *Conneen v. MBNA Am Bank*, N.A 334 F.3d 318 330 (3rd Cir 2003).

9

## I. Reasonable Accommodation Claim

Under the Americans with Disabilities Act, reasonable accommodations are defined as "modifications or adjustments to the work environment, or to the manner… under which the position held … is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."[40] Employers are obligated to consider if possible reasonable accommodations for an employee's disability are available and offer them to an employee if it is feasible to do so.[41] In order to make a *prima facie* case that DuPont has failed to provide her with a reasonable accommodation, Obilor must show: "(1) that she is an individual with a disability under the ADA; (2) that she can perform the essential functions of her position with an accommodation; (3) that her employer had notice of her alleged disability; and (4) that her employer failed to accommodate her. . . "[42] If Obilor cannot make a facial showing of any one of these elements, then her claim must fail and summary judgment must be granted to DuPont.[43]

Discrimination laws do not require that employers "assign existing employees or hire additional employees to perform the essential functions of an employee's job which [the employee] cannot perform because of an impairment."[44] Courts have also recognized that an employer is not obligated to eliminate or reallocate the

[40] 29 C.R.F. 1630.2 (o)(1)(ii).
[41] *Id.*
[42] *Conneen*, 182 F.Supp at 376-377.
[43] *Id.* At 377.
[44] *Lucarelli v CONRAIL*, 2002 U.S. Dist. LEXIS 12201, at 30 (E.D.Pa March 26, 2002).

10

essential functions of an employee's job in order to accommodate a disabled employee.[45] Unlike the Federal ADA, the Delaware statute has a specific provision that specifies what constitutes a "hardship" on an employer in terms of the monetary costs associated with accommodation. The statute provides:

> [A] "reasonable accommodation" . . . does not require than an employer. . . make changes to accommodate a person with a disability where. . . the total cost of the changes [for an existing employee] would bring the total cost of changes made to accommodate the employee's disabilities . . . to **greater than 5 percent** of the employee's current salary or current annualized hourly wage.[46]

In other words, under DEPA, the cost of accommodation is *not* considered a hardship to the employer if the total costs associated with the accommodation are less than 5% of the employee's current salary. While the statute does not indicate that an accommodation is a hardship *per se* as a matter of law if the costs are more than 5% of the employee's salary, it does provide guidance to this Court regarding what constitutes a hardship.

The focus in this case is on the second *prima facie* element. Plaintiff contends that she can perform the essential elements of her job working entirely from home and Dupont contends that she cannot. Plaintiff's job description makes it clear that she is responsible for desk audits.[47] Additionally, the defendant has submitted the

---

[45] *See, e.g. Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001); *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991); *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 687 (4th Cir. 1997); *Gonzales v. City of New Braunfels*, 176 F.3d 834, 838 (5th Cir. 1999); *Hoskins v. Oakland County Sheriff's Dep't*, 227 F.3d 719, 729-31 (6th Cir. 2000); *Dvorak v. Mostardi Platt Assocs.*, 289 F.3d 479, 484-85 (7th Cir. 2002); *Alexander v. Northland Inn*, 321 F.3d 723, 728 (8th Cir. 2003).
[46] 19 Del. C. §722(6)(d)(2) (Emphasis added).
[47] App. At A496-498 (U.S. Import-Export Regulatory Specialist Job Requisition)

11

affidavit of Susan Shustack, a DuPont employee who was responsible for managing Sourcing and Logistics Consultants including Obilor. In her affidavit, Ms. Shustack indicated:

- In addition to other duties, Sourcing and Logistics Consultants were expected to devote 30-40% of their time completing various internal and/or government audits.

- To perform the aforementioned audits in April/May 2017 a Sourcing and Logistics Consultant was required to engage in an onsite analysis of various records and documents that were not otherwise stored electronically

And

- If a Sourcing and Logistics Consultant was not able to present onsite, the auditing [duties] would have to be reassigned to another colleague, or otherwise outsourced to a third party at a cost in excess of $10,000 and exceeding 5% of Obilor's annual salary as a Sourcing and Logistics Consultant.

Shustack's testimony was submitted in support of DuPont's Motion for Summary Judgment. Once such testimonial evidence is submitted, the Plaintiff has the burden of producing evidence that contradicted this testimony.[48] Plaintiff has failed to produce any evidence contradicting Shustack's affidavit. Shustack's testimony is therefore undisputed, and the Court will consider her testimony to be factually true for purposes of this summary judgment motion.[49]

---

[48] *Highline Financial Services, Inc. v. Rooney*, 1996 WL 663100, at *1 (Del. Supr. 1996).

[49] Plaintiff maintains that she did not perform desk audits. Whether plaintiff performed desk audits is not a material fact for purposes of this motion. The material fact is whether Plaintiff's job description *required* her to perform desk audits, not whether Plaintiff *did* in fact perform desk audits. The undisputed evidence is that Plaintiff was required to perform desk audits as part of her job description. In fact, Plaintiff's performance reviews noted that she was not performing desk audits and that she needed to start performing them (App. At A461).

The audits were an essential function of the plaintiff's job.[50] The nature of the audits required the plaintiff to physically work at DuPont's office in Wilmington. This essential function could not be performed by a person whose restriction required them work exclusively from home. Given that Plaintiff's job description as a Sourcing and Logistics Consultant required her to work onsite at DuPont's Wilmington office, there was simply no reasonable accommodation available to the plaintiff that would allow her to perform her essential job functions from home full time.

DuPont was not required by law to transfer the tasks which required Obilor to work at the company's office in Wilmington to another employee. Outsourcing these tasks would have required Dupont to incur costs in excess of 5% of the plaintiff's salary and closer to 10% of her salary. Under 19 *Del. C.* §722(6)(d)(2), this would have placed an undue hardship on DuPont. On this record, Plaintiff cannot meet her burden to show that DuPont could have made a reasonable accommodation that would allow her to work at home as a result of her disabilities.[51]

## II. __Interactive Process Claim__

Plaintiff also alleges that DuPont failed to engage in the required "Interactive Process" with Plaintiff to determine whether or not it was possible to provide a

---

[50] In assessing whether a job function is "essential," it is not the function of the courts to micro-manage corporate practices. Employers determine the essential features of a job. *Connenn v MBNA Bank N.A.*, 334 F.3d 318 (3rd Cir. 2003).

[51] *See Fischer v. Pepper Hamilton LLP*, 2016 U.S. Dist LEXIS 10603 (E.D. Pa. Jan. 29, 2016; *Kiburz, v. England*, 2008 U.S. Dist. LEXIS 55023 (M.D. Pa. July 16, 2008). DuPont alleges that there were other duties of plaintiff's job that required her to be onsite. The Court is not persuaded at the summary judgment stage that those articulated reasons are unrebutted in the factual record. With respect to the audit requirement, however, those facts are unrebutted.

13

reasonable accommodation for her disability. In support of its motion for summary judgment, DuPont has presented record evidence that it engaged in an interactive process. This evidence has not been challenged.

When DuPont was presented with the first note from Dr. Anizoba stating that Plaintiff should be restricted to working only one day per week onsite, DuPont contacted Dr. Anizoba and requested additional information.[52] This request was an appropriate component of the interactive process.[53] In response to this request, Dr. Anizoba sent DuPont a new note indicating that Obilor should work remotely full-time for an indefinite timeframe.[54] After receiving Dr. Anizoba's second note, DuPont personnel conducted an internal meeting and created an email chain to determine whether there was any reasonable accommodation for Obilor's medical conditions available.[55] DuPont's team determined that plaintiff could not fulfill the essential functions of her job while working from home remotely on a full-time basis.[56] A DuPont human resources officer then completed a six-page "Interactive Accommodation Review" which articulated the reasons why Plaintiff would not be able to fulfill her essential job duties in light of her onsite work restrictions.[57] DuPont also explored whether Obilor could be moved to a new position that would enable

[52] App. at. 459 (Emails re: Response to Accommodation Request dated 4/26-27/17); A493 (Obilor Email re: Follow Updated 4/26/17); A501 (Clinic Visit Notes).
[53] *Munoz v. Nutrisystem, Inc.* 2014 U.S. Dist. LEXIS 104465 (E.D.Pa. July 30, 2014).
[54] App. At A506 (Doctor's Note from Clara Anizoba, M.D. dated 3/9/17)
[55] Miguel Gonzalez Deposition Transcript dated 2/13/20 at A385; App. At 448 (Appointment Notice for Formal Accommodation Review Scheduled for 4/26/17)
[56] Interactive Accommodation Review Template dated 5/10/17 at A451-458; Miguel Gonzalez Deposition Transcript dated 2/13/20 at A401.
[57] Shustack and Dowling Emails re: Effort to Accommodate in Alternative Position dated 5/1/17 at A449; *Id.*

14

her to work remotely, but determined that it had no such positions open. The review concluded that it was not feasible for DuPont to accommodate Obilor's work restrictions.[58]

Plaintiff has presented no evidence that the process described above did not occur, nor that DuPont engaged in this interactive process in bad faith.[59] Under Superior Court Civil Rule 56, plaintiff's failure to provide any rebuttal evidence leads to the conclusion that DuPont both engaged in this process and did so in good faith.[60] As such, DuPont has presented facts indicating that it conducted the required Interactive Process, and that DuPont ultimately concluded in good faith that it could not accommodate Plaintiff's work restrictions. Therefore, summary judgment is **GRANTED** for the Defendant with respect to Plaintiff's claim that DuPont failed to meet its obligations under the Interactive Process.

For the reasons stated above DuPont's Motion for Summary Judgment is **GRANTED** and judgment is entered in favor of the Defendant.

**IT IS SO ORDERED.**

_____
Francis J. Jones, Judge

cc:     File&ServeXpress

---

[58] *Id.*; Shustack and Dowling Emails re: Plan for Accommodation Template dated 4/27/17 at A457-458.

[59] Plaintiff claims that she was not involved in this process. There is a factual dispute about this point. But assuming this is true as we must at this stage of the proceedings there is no evidence that has been produced that a reasonable accommodation existed and DuPont unreasonably failed to provide it. Absent this proof the interactive claim fails. *Whelan v. Teledyne Metalworking Products.*, 226 F App'x 141, 147 (3ʳᵈ Cir. 207); *Taylor v. Phoenixville School District*, 184 F.3d 296, 319 (3ʳᵈ Cir. 1999).

[60] *See Coleman v. Garrison*, 327 A.2d 757, 762 (Del. Super. 1974) ("The burden is on the plaintiffs, if they desire to demonstrate a genuine issue for trial, to present affirmative opposition through depositions, answers to interrogatories or affidavits to the facts and conclusions set forth in defendants' affidavits. Since the plaintiffs have not done so, they must suffer the consequences of having summary judgment entered on behalf of the defendants.")

15